IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GUIDECRAFT, INC., Plaintiff, vs. OJCOMMERCE, LLC, OJCOMMERCE.COM, INC., NAOMI HOME, INC., Defendants, | ) | Civil Action No. 2:18-CV-01247<br><br>District Judge Joy Flowers Conti<br>Magistrate Judge Lisa Pupo Lenihan<br><br>ECF No. 30 |

**REPORT AND RECOMMENDATION**

## I. RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss (ECF No. 30) filed by Defendants OJCommerce, LLC, OJCommerice.com, Inc. and Naomi Home, Inc., be granted on the basis of lack of personal jurisdiction, and the Complaint be dismissed without prejudice. It is further recommended that the Motion to Transfer Venue be dismissed without prejudice.

## II. REPORT

### A. Factual Background & Procedural History

Plaintiff Guidecraft, Inc. ("Plaintiff") is a manufacturer of children's toys and furniture. Amended Compl. at ¶ 10 (ECF No. 26). Plaintiff is a New York Corporation with its place of business in Winthrop, Minnesota, and "since 1966 has been engaged in designing, manufacturing, marketing, and selling [their products] in this Judicial District and elsewhere, principally through resellers and internet sales." *Id*. at ¶¶ 1, 10.

Defendants OJCommerce, LLC, OJCommerce.com, Inc., and Naomi Home, Inc. (collectively, "Defendants") are Delaware corporations owned, operated, and controlled by the same individual, with their principal place of business in Miramar, Florida.[1] *Id*. at ¶¶ 2-4, 6. From 2012 to 2018, Defendants were resellers of three of Plaintiff's products: its KITCHEN HELPER® line of children's stools, its Step-Up children's stools, and its High-Rise Step-Up children's stools. *Id*. at ¶¶ 29, 30.

Plaintiff alleges that it terminated Defendants as its resellers for violations of Plaintiff's MAPP pricing policies. *Id*. at ¶ 34. Plaintiff alleges that after being terminated as its resellers, Defendants began to develop, market and sell infringing versions of these products "throughout the United States and within this Judicial District." *Id*. at ¶ 35. Plaintiff alleges that the sale of these stools is being done "on the Internet through Defendant OJCommerce.com's interactive website, which provides a link that consumers click on to purchase the infringing products, as well as through online retailer Amazon." *Id*. at ¶ 36-38.

Plaintiff filed the Amended Complaint on December 11, 2018. (ECF No. 26). Plaintiff asserts counts under the Lanham Act of Trademark Infringement, Unfair Competition and False Designation of Origin, and Trade Dress Infringement. Amended Compl. at ¶¶ 71-96 (ECF No. 26). In addition, Plaintiff asserts counts of Copyright Infringement, Common Law Unfair Competition, Tortious Interference with Business Relations, Unjust Enrichment, and violation of Pennsylvania's Trademark Dilution Law. *Id*. at ¶¶ 97-123. On January 15, 2019, Defendants filed joint Motions to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), and a Motion to Transfer Pursuant to 28 U.S.C. § 1404(a). (ECF No. 30). With the

[1] As all three Defendants are corporate entities owned and controlled by the same individual, the Court will be understood to refer to all three when it refers to "Defendants."

filing of Plaintiff's Briefs in Opposition (ECF Nos. 34, 35), this Motion is now ripe for disposition.

For the reasons set forth below, the Court respectfully recommends that the Motion to Dismiss be granted as to all Defendants for lack of personal jurisdiction.

**B. Standard of Review**

The United States Court of Appeals for the Third Circuit summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir. 2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014).

In responding to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002); *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996)); s*ee also Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Where, as here, an evidentiary hearing


is not held on the 12(b)(2) motion, the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Metcalfe*, 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co*., 496 F.3d 312, 316 (3d Cir. 2007)); *D'Jamoos v. Pilatus Aircraft Ltd*., 566 F.3d 94, 102 (3d Cir. 2009) (citing *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004)). A plaintiff "presents a prima facie case for the exercise of personal jurisdiction by 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.'" *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1221 (3d Cir. 1992) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)) (other citation omitted). In deciding a Rule 12(b)(2) motion, although the court must accept the plaintiff's allegations as true and resolves all doubts in its favor, *D'Jamoos*, 566 F.3d at 102 (citing *Miller Yacht Sales, supra*), plaintiff may not rest solely on the pleadings to satisfy its burden of proof. *See Pinker*, 292 F.3d at 368; *Carteret Sav. Bank*, 954 F.2d at 146. Rather, the plaintiff must present evidence that demonstrates a prima facie case for the exercise of personal jurisdiction. *See Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992). If the plaintiff succeeds, the burden then shifts to the defendant to demonstrate that an exercise of personal jurisdiction by the forum state would violate due process, i.e., the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. *Miller Yacht Sales*, 384 F.3d at 97 (citing *Burger King*, 471 U.S. at 476).

The district court is vested with broad discretion in determining whether transfer of venue is appropriate. *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973) (citations omitted); *Jumara v. State Farm Ins. Co*., 55 F.3d 873, 883 (3d Cir. 1995).

**C. <u>Discussion</u>**

**1. Personal Jurisdiction**

Defendants argue that this Court has no personal jurisdiction over the parties. OJCommerce's Br. in Supp. Mot. to Dismiss ("OJCommerce Br.") at p. 1 (ECF No. 32). None of the parties are citizens of Pennsylvania, and none of the conduct is alleged to have substantially occurred in Pennsylvania. *Id*. Furthermore, none of the Defendants have sufficient contacts with Pennsylvania to justify exercising personal jurisdiction over them in this forum. *Id*. at p. 3. Specifically, Defendants argue that simply maintaining an online sales website is not enough to show that Defendants "purposefully directed" their activities at this forum, and not enough to establish personal jurisdiction. *Id*. (citing *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007)). Plaintiff must establish that Defendants "repeatedly and consciously chose to process" Pennsylvania customers' orders, according to Defendants. *Id*. (citing *Hershey Co. v. Pagosa Candy Co*., 1:07-CV-1363, 2008 WL 1730538, at *7 (M.D. Pa. Apr. 10, 2008). Defendants maintain that the allegations of selling the infringing products "throughout the United States" including the Commonwealth of Pennsylvania and "this Judicial District" are insufficient to show purposeful availment and thus would not make exercising jurisdiction "comport with traditional notions of fair play and substantial justice." *Id*. at pp. 2-3 (citing *Marten*, 499 F.3d at 296 (3d Cir. 2007); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Defendants would have to travel almost 1,200 miles from Broward County, Florida, where all the witnesses and evidence are located, to the Western District of Pennsylvania. *Id*. at p. 4. Likewise, Plaintiff's witnesses and evidence are located 1,000 miles away in Minnesota. *Id*. Lastly, Pennsylvania has essentially no interest in this case when the Plaintiff is not even a resident of this state, in contrast to the interest Minnesota or Florida would have. *Id*. at pp. 4-5.

In order for personal jurisdiction to exist over Defendants in the Western District of Pennsylvania, each Defendant must have certain "minimum contacts" with the forum state "such

that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[2] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (other citations omitted). The minimum contacts requirement serves the purpose of "protect[ing] the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297 (1980) (citations omitted). This framework enables "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297. Thus, a plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" can arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction. Specific jurisdiction applies where the cause of action is related to or arises from the defendant's contacts with the forum, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker,* 292 F.3d at 368). General jurisdiction applies where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action*, Pennzoil Prods. v. Colelli & Assocs., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citation omitted). In the instant matter, Plaintiffs submit that personal jurisdiction exists over Defendants based solely upon specific jurisdiction. Amended Compl. at ¶ 10 (ECF No. 26); Pl.'s

---

[2] The Due Process standard must be applied to each defendant. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 145 n.6 (3d Cir. 1992) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)).

Br. in Opp. to OJCommerce ("Pl.'s Br. to OJCommerce") at p. 5 (ECF No. 34).

Specific personal jurisdiction requires the Court to conduct a three-part test. *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Initially, the court must determine whether the defendant has "'purposefully directed'" its activities toward the forum state. *Id.* (quoting *Burger King Corp.*, 471 U.S. 462 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation."))). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A.,* 466 U.S. 408, 414 (1984); *O'Connor v. Sandy Lane Hotel Co., Ltd.,* 496 F.3d 312, 317 (3d Cir. 2007)). Finally, if the plaintiff has established the first two elements, only then does the court proceed to the third part of the inquiry–whether the defendant's contacts with the forum state are such that maintenance of the action "'does not offend traditional notions of fair play and substantial justice.'" *World-Wide Volkswagon,* 444 U.S. at 292 (citing *Int'l Shoe,* 326 U.S. at 316); *D'Jamoos,* 566 F.3d at 102. In this regard, the court of appeals observed:

> The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. [at 253]. To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317. The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson*, 357 U.S. at 253.

*D'Jamoos,* 566 F.3d at 102-03. The inquiry under *D'Jamoos* must be applied to each claim and

to each defendant independently.[3] *Marten v. Godwin,* 499 F.3d 290, 296 (3d Cir. 2007) (citing *Remick v. Manfredy,* 238 F.3d 248, 255-56 (3d Cir. 2001)). Plaintiffs bear the burden of proof on the first two elements, and only if Plaintiffs meet this burden does the burden shift to Defendants to prove the third element. *Burger King*, 471 U.S. at 476-78.

In the context of operating a website and to what extent such a website subjects its owner to the jurisdiction of the state from where it is accessed, courts have looked to *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) for guidance as to the nature of the website:

> [O]ur review of the available cases and materials reveals that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet. This sliding scale is consistent with well-developed personal jurisdiction principles. At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. [citation omitted]. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. [citation omitted].

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).

In its Brief in Opposition, Plaintiff counters that Defendants are subject to the personal jurisdiction of this Court because they market and sell goods, including the infringing products, via the OJCommerce.com website, to consumers throughout the country, including Pennsylvania. Pl.'s Br. to OJCommerce at p. 7 (ECF No. 34). "The website allows users to select

[3] In this instance, there is no need to apply the inquiry independently to each defendant as there are no distinguishing factors among the three in terms of the jurisdictional analysis.

products, add them to their cart, and purchase them directly from the website. [citation omitted]. This is a clear representation that [Defendants] 'clearly do [] business over the Internet' as contemplated by the *Zippo* Court." *Id*. (citing *Zippo Mfg. Co. v. Zippo Dot Com*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997)). According to Plaintiff, having an interactive website that allows internet users to purchase directly from Defendants from anywhere in the country, as well as using Amazon.com to sell their products, come with "concomitant legal responsibilities" that constitute the minimum contact required as part of the jurisdictional analysis. *Id*. (citing *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458 JS ETB, 2012 WL 2001443, at *1 (E.D.N.Y. June 4, 2012).

The Court disagrees. While the commercially interactive nature of Defendants' website and its use of the Amazon site place Defendants' actions towards the more interactive end of the *Zippo* spectrum, Plaintiff has not met its burden of showing that Defendants made purposeful contact with the Western District of Pennsylvania.

The Court of Appeals articulated the controlling principle in determining whether websites are sufficiently interactive/commercial to show contacts directed to the forum:

> As *Zippo [Mfg. Co. v. Zippo Dot Com, Inc*., 952 F.Supp. 1119 (W.D.Pa.1997)] and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant "purposefully availed" itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts.

*Toys "R" Us, Inc. v. Step Two, S.A*., 318 F.3d 446, 454 (3d Cir. 2003). Here, Plaintiff makes no allegations that could be construed as an action that purposefully targeted the Commonwealth of Pennsylvania on the part of Defendants. Plaintiff alleges that Defendant sells products "throughout the United States, including the Commonwealth of Pennsylvania..."

Amended Compl. at ¶¶ 37-38 (ECF No. 26). Plaintiff's argument in favor of this Court exercising personal jurisdiction boils down to the expectation that Defendants should be subject to jurisdiction anywhere in the United States where customers can access and purchase from the OJCommerce and Amazon websites, because they profit from the wide geographic reach of the internet. While the Court is cognizant of the benefits a business derives from being able to glean costumers thousands of miles away from the physical site of the business, such reach does not meet the definition of "purposeful availment" as interpreted by the Third Circuit, and neither does it satisfy the fairness inquiry. Plaintiff has not shown how Defendants knowingly made contact with Pennsylvania, or how it directly targeted its website toward Pennsylvania, other than through its commercial activities on the internet.

Even if *arguendo* Defendants' internet activities met the first two prongs of the *D'Jamoos* test, subjecting them to jurisdiction in this district would still not comport with traditional notions of fair play and substantial justice.

> The Supreme Court has identified several factors that courts should consider when balancing jurisdictional reasonableness. Among them are "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate [and international] judicial system's interest in obtaining the most efficient resolution of controversies," *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174 (quotation marks omitted), and "[t]he procedural and substantive interests of other nations." *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 115, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

*O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007). Plaintiff argues that exercising personal jurisdiction in this context comports with notions of fair play and substantial justice, because "the very nature of internet sales means that the Defendants are likely to be subject to personal jurisdiction in districts in which it is not convenient for them to litigate,

however, they must accept those responsibilities when they chose to do business in Pennsylvania." Pl.'s Br. to OJCommerce at p. 8 (ECF No. 34.)

Plaintiff also maintains that Pennsylvania has a significant interest in adjudicating this case as Plaintiff claims violations of Pennsylvania statutory and common law, and Pennsylvania has an interest in protecting its citizens from counterfeit products. *Id.* at p. 8. Plaintiff cites to *Telebrands Corp. v. Mopnado*, where the court found that the defendant purposefully availed itself of the privilege of doing business in New Jersey by selling its products through its Amazon storefront, even though the defendant is organized under Delaware law and has its principal office in California, with no physical presence of any kind in New Jersey. No. 14-07969, 2016 WL 368166, at *7 (D.N.J. Jan. 12, 2016). The court's reasoning in that instance was that the defendant was "intentionally using Amazon's vast, established infrastructure to sell and ship its products to consumers nationwide," and thus defendant took "advantage of Amazon's national presence" and purposefully availed itself of the privilege of doing business in New Jersey when it sold at least 626 units of its product to New Jersey. *Id*. However, the plaintiff in *Mopnado* was both headquartered and incorporated in New Jersey. *Id*. at * 8. Here, neither Plaintiff nor Defendants have any such relationship to Pennsylvania. Furthermore, as Defendants state in their brief, both parties' witnesses would have to travel more than 1,000 miles to the forum state, making the interest Pennsylvania has in adjudicating this matter far less compelling. OJCommerce Br. at p. 4 (ECF No. 32.) As it would be a burden on Defendants to be subject to jurisdiction in this district, Pennsylvania's interest in the adjudication of this case is tenuous, and there is no compelling argument for Plaintiff to obtain convenient and effective relief in this district, the factors weigh against the Court's exercise of jurisdiction over Defendants.

Accordingly, Plaintiff fails to show that Defendants purposefully directed their activities toward Pennsylvania, and moreover fails to show that any purported contact with Pennsylvania would allow the Court to exercise jurisdiction over Defendants in a way that comports with traditional notions of fair play and substantial justice. As a result, the Court finds that it lacks personal jurisdiction over Defendants. Therefore, it is respectfully recommended that Defendants' motion to dismiss under Rule 12(b)(2) be granted as to all Defendants and the claims against them be dismissed without prejudice.

**2. Venue**

Defendants also move to dismiss this action on the basis that venue in the Western District of Pennsylvania is improper. Pennsylvania is not Defendants' state of residence, nor is there an allegation that a substantial part of the events at issue took place in Pennsylvania. OJCommerce Br. pp. 5-6 (ECF No. 32). Defendants ask that the case be transferred to the Southern District of Florida as all Defendants reside there and at least two important witnesses for Defendant are independent contractors residing in Florida. Plaintiff's arguments in favor venue being proper are the same as to why personal jurisdiction is proper—this district is part of the entire geographic reach of Defendant's consumer market via their website and the Amazon website. Pl.'s Br. to OJCommerce at p. 9 (ECF No. 34).

Venue may lie in this judicial district if "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" here, 28 U.S.C. § 1391(b)(2), or defendant is subject to personal jurisdiction and "there is no district in which the action may otherwise be brought." 28 U.S.C. § 1391(b)(3). As the Court finds that it cannot properly exercise personal jurisdiction over Defendants, Plaintiff's chosen venue is improper. This is also true under 28 U.S.C. §1391(b)(3), which provides for

proper venue in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." The Court finds that none of the provisions under § 1391 would allow this district to serve as a proper venue for the case at hand. As the Court has found that the exercise of personal jurisdiction over Defendants to be improper, it is respectfully recommended that Defendants' Motion to Dismiss under Rule 12(b)(3) be denied as moot.

Lastly, Defendants move to transfer venue to the Southern District of Florida under 28 U.S.C. § 1404(a). Mot. to Dismiss at ¶6(b) (ECF No. 30). Plaintiff argues that the Southern District of New York provides a more appropriate forum, should the Court consider transfer. Pl.'s Br. to OJCommerce at p. 13 (ECF No. 34). It argues that under the test set forth in *Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3d Cir. 1995), Defendants' choice of forum should not be given more weight than Plaintiffs, the fact that witnesses and records are located in Florida is not dispositive, and Plaintiff is a resident of the Southern District of New York. *Id*. at pp. 12-13.

Whether 28 U.S.C. § 1404(a) is applicable to transfers in the absence of personal jurisdiction is a matter of some controversy. There is, however, significant authority within the Third Circuit for application of § 1404(a) where venue is proper but where personal jurisdiction is lacking. *See United States v. Berkowitz*, 328 F.2d 358, 361 (3d Cir. 1964) *Gehling v. St. George's School of Medicine*, 773 F.2d 539 (3d Cir. 1985); *Reyno v. Piper Aircraft Co.,* 630 F.2d 149, 164-65 (3d Cir. 1980) *rev'd on other grounds*, 434 U.S. 235 (1981). Where venue is improper *and* jurisdiction is lacking, as in the case at hand, courts look to 28 U.S.C. § 1406(a), which provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." A district court has authority to dismiss a case with improper venue, or transfer venue for the sake of justice and judicial

expediency despite the plaintiff's chosen venue being improper and there is a lack of personal jurisdiction. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962). The Third Circuit has restated the principles in *Goldlawr*:

> *Goldlawr's* discussion of § 1406(a) acknowledges that dismissals will bar actions that are not refiled in the proper forum within the forum state's statute of limitations. By contrast, transfers, "'in the interest of justice,'" "remov[e] whatever obstacles [that] may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Id.* at 466–67, 82 S.Ct. 913 (quoting 28 U.S.C. § 1406(a)).

*Lafferty v. St. Riel*, 495 F.3d 72, 79 (3d Cir. 2007). "Transfer in lieu of dismissal is generally appropriate to avoid penalizing plaintiffs by 'time-consuming and justice-defeating technicalities.'" *Bockman v. First Am. Mktg. Corp.,* 459 F. App'x 157, 162 n. 11 (3d Cir. 2012) (quoting *Goldlawr*, 369 U.S. at 467). A transfer would be appropriate if is needed to overcome a bar by the statute of limitations. As Plaintiff indicates it would prefer transfer to the Southern District of New York if the court decides to transfer the case, the Court will analyze whether Plaintiff would be time-barred if it refiles the case in that court.

The statute of limitations for claims under the Lanham Act in the Southern District of New York is six years. *See Tiffany & Co. v. Costco Wholesale Corp.,* 127 F. Supp. 3d 241, 262 (S.D.N.Y. 2015) (finding that "the Lanham Act itself establishes no specific limitations period for unfair competition claims. [citations omitted] Therefore, a federal court must 'look[ ] to the most appropriate or analogous state statute of limitations.' [citations omitted] In this case, the most analogous state statute is New York's six-year statute of limitations for claims sounding in fraud."). According to Plaintiff, Defendants acted as Plaintiff's resellers from June 2012 to February 2018. Amended Compl. ¶ 29 (ECF No. 26). Plaintiff makes no allegations of any infringing activities on the part of Defendants during the period in which Defendants acted as Plaintiff's resellers. Thus, the Court presumes that Defendants began their illegal commercial

activities after February of 2018. Plaintiff is well-within the statute of limitations period to refile its Lanham Act claims in the Southern District of New York. The same period applies to Plaintiff's common law unfair competition claim. *Mario Valente Collezioni, Ltd. v. AAK Ltd.,* 280 F. Supp. 2d 244, 258 (S.D.N.Y. 2003) (applying the six-year statute of limitations because defendants' behavior more closely resembles that of fraud rather than an injury to property, and thus finding that the Lanham Act is more analogous). In addition, Plaintiff's unjust enrichment claim also fall within the six-year period. *Golden Pac. Bancorp v. F.D.I.C.,* 273 F.3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for claims of unjust enrichment, breach of fiduciary duty, corporate waste, and for an accounting is generally six years.")

Plaintiff's copyright infringement is subject to a three-year statute of limitations period in the Southern District of New York after the claim accrues. *Kregos v. Associated Press*, 3 F.3d 656, 661 (2d Cir. 1993) (citing 17 U.S.C. § 507(b).). Plaintiff is within its limitations period for its copyright infringement claim. Plaintiff's tortious interference with business relations claims would also fall within a three-year statute of limitations period, and thus Plaintiff would not be time-barred as to that claim. *Riddell Sports Inc. v. Brooks*, 872 F. Supp. 73, 77 (S.D.N.Y. 1995) (applying three-year statute of limitations claim for tortious interference with contractual relations). Finally, a New York claim for trademark dilution analogous to the initial claim under Pennsylvania's trademark dilution law, whether under the Lanham Act or under New York Law, is also subject to a three-year period of limitation. *Charles Atlas, Ltd. v. DC Comics, Inc*., 112 F. Supp. 2d 330, 334 n.7 (S.D.N.Y. 2000).

Accordingly, it is respectfully recommended that the Motion to Transfer be denied. Plaintiff has ample time to refile the case in the Southern District of New York. The transfer provision under 28 U.S.C. § 1406(a) is not applicable in this instance. *See Greene v. Horry Cty.*,

650 F. App'x 98, 99 (3d Cir. 2016) ("[W]e are satisfied that the interests of justice did not require the District Court to transfer the action rather than dismiss it. After the District Court dismissed the complaint, Greene had ample time to refile in South Carolina within that state's three-year statute of limitations.").

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that Defendants' Motion to Dismiss be granted based on the lack of personal jurisdiction over Defendants. Furthermore, it is respectfully recommended that Defendants' Motion to Transfer Venue be denied without prejudice for Plaintiff to refile this matter in the venue of its choice.

In accordance with the Federal Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of this Report and Recommendation to file written objections thereto. Any party opposing such objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: May 20, 2019

BY THE COURT:

Lisa Pupo Lenihan
U.S. Magistrate Judge